UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TAMMY WINGARD,

    Plaintiff,

v.    CASE NO. 3:14-cv-681-J-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

    Defendant.
_____/

### MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Plaintiff alleges she became disabled on January 26, 2010. (Tr. 13, 348.) The assigned Administrative Law Judge ("ALJ") held hearings on November 28, 2012 and March 22, 2013, at which Plaintiff was represented by an attorney. (Tr. 34-84.) The ALJ found Plaintiff not disabled from January 26, 2010 through May 10, 2013, the date of the decision. (Tr. 13-27.)

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9.)

1

In reaching his decision, the ALJ found that Plaintiff had the following severe impairments: "disorders of the spine, status post cervical fusion, status post bilateral carpal tunnel release, degenerative joint disease, fibromyalgia, and hypertension." (Tr. 15.) Further, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (Tr. 17.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from January 26, 2010 through May 10, 2013. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED.**

## I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence,

the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff argues that the ALJ erred in giving significant weight to Dr. Cooke's non-examining opinions while giving little weight to Dr. Burns's treating opinions, the results of a Functional Capacity Evaluation ("FCE") adopted by Dr. Burns, and Dr. Harper-Nimock's examining opinions, in assessing Plaintiff's RFC.  Defendant responds that the ALJ properly evaluated the medical opinions of record.

### A.   Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v.*

3

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v.*

*Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008).  Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curium).  *See also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

### B. Relevant Evidence of Record

#### 1. Robert Burns, M.D.

Dr. Burns treated Plaintiff since August 16, 2011.  (Tr. 664-705, 766-89, 838-39.)  He diagnosed lumbar facet arthropathy; sacral dysfunction; neck pain; cervicocranial syndrome; cervical spurring, radiculopathy, degenerative disc disease, and facet arthropathy; fibromyalgia; sacroiliitis; and chronic fatigue syndrome.  (Tr. 704.)  Plaintiff's reported pain level was 7, 8, or 9 out of 10, with narcotic pain medication.  (Tr. 665, 668, 671, 674, 677, 680, 683, 686, 689, 692, 695, 698, 701, 772, 775, 780, 785.)  Dr. Burns repeatedly noted that Plaintiff denied "headache, transient weakness, memory loss, dementia, insomnia, vertigo, loss of balance, seizures and tremors," but admitted numbness and tingling in the upper and lower extremities.  (Tr. 666, 669, 672, 675, 678, 681, 684, 687, 690, 699, 702, 770, 773, 777, 782, 787.)

On August 27, 2012, Dr. Burns adopted an FCE of Plaintiff, which was completed by another evaluator on August 10, 2012.  (Tr. 821.)  The FCE

provided that Plaintiff would be unable to work at any exertional level.  (*Id.*)  Plaintiff had "significantly altered gait" and reported "intense pain rating of 8 at time of testing, demonstrating frequent shifting and changes of position throughout testing from sitting to standing with reports of disruption of pain symptoms."  (*Id.*)  Plaintiff also reported limited participation in activities of daily living.  (*Id.*)  Testing revealed "bilateral strength deficits" and "significant functional intolerance to negligible levels of effort and repetitions of material and non-material handling activities, suggestive of limitations with her ability to safely perform components of the Sedentary Duty Physical Demand Level."  (*Id.*)  Plaintiff was found to have "poor tolerance to prolonged periods of sitting, standing and walking."  (*Id.*)

On September 5, 2012, Dr. Burns completed a Physical RFC Questionnaire for Plaintiff.  (Tr. 818-20.)  He stated that Plaintiff had numbness and tingling in the upper and lower extremities, transient weakness, memory loss, dementia, insomnia, vertigo, loss of balance, seizures, and tremors.  (Tr. 818.)  He also stated that Plaintiff had pain in the neck, low back, shoulders, legs, arms, and hands, as well as "global fibromyalgia" pain and persistent fatigue.  (*Id.*)  Dr. Burns opined that Plaintiff: could walk one block without rest or severe pain; could sit thirty minutes and stand fifteen minutes at a time; could sit less than two hours and stand/walk less than two hours in an eight-hour workday; would have to take one or two unscheduled breaks during an eight-hour workday lasting two to three

hours; could never lift ten or more pounds and could rarely lift less than ten pounds; would have significant limitations with reaching, handling, or fingering; would miss more than four days of work per month due to impairment; and would have to lie down for two to three hours at unscheduled times during an eight-hour workday.  (Tr. 819-20.)  Dr. Burns also opined that Plaintiff's pain would be severe enough to constantly interfere with her attention and concentration needed to perform even simple work tasks.  (Tr. 818.)

During a follow-up visit on February 11, 2013, Dr. Burns stated that Plaintiff's "[c]hronic neck, back and abdominal pain [was] controlled with narcotic analgesics."  (Tr. 839.)  In the same progress note, he stated that Plaintiff received only "some relief from medications."  (*Id.*)  On March 11, 2013, Dr. Burns similarly stated that Plaintiff received "some relief from medications," but her "[c]hronic neck, back, and fibromyalgia pain [was] adequately controlled with narcotic analgesics."  (Tr. 838.)

### 2.   Lynn Harper-Nimock, M.D.

On July 6, 2012, Dr. Harper-Nimock evaluated Plaintiff at the request of the Commissioner.  (Tr. 646-59.)  Dr. Harper-Nimock diagnosed status post cervical fusion, status post bilateral carpal tunnel release, degenerative joint disease, hypertension, nicotine dependency, and chronic obstructive pulmonary disease.  (Tr. 648.)  Plaintiff's gait and station were abnormal, she could not walk on heels

and toes or squat, she needed help changing for the exam and getting on and off the examining table, and she had some difficulty arising from a chair. (Tr. 647.) Dr. Harper-Nimock found decreased range of motion in Plaintiff's shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles. (Tr. 648.) Also, there was decreased flexion, extension, lateral flexion, and decreased rotary motion bilaterally in Plaintiff's cervical, thoracic, and lumbar spine, paraspinous muscle spasm and tenderness, and positive straight leg raising. (*Id.*)

In the Medical Source Statement ("MSS"), Dr. Harper-Nimock opined that Plaintiff "had marked limitations for prolonged sitting, standing, walking, climbing, or heavy lifting." (*Id.*) More specifically, Plaintiff could sit for one hour and stand/walk for fifteen minutes at a time; sit, stand, and walk for four hours each in an eight-hour workday; occasionally reach, handle, finger, feel, push/pull with her hands, and operate foot controls. (Tr. 655-56.)

### 3.   Charles L. Cooke, M.D.

Dr. Cooke examined the medical record and testified at the November 28, 2012 hearing before the ALJ. (Tr. 49-71.) He also answered post-hearing interrogatories by mail. (Tr. 834-36.) Dr. Cooke found that Plaintiff did not have rheumatoid arthritis, bilateral occipital neuralgia, or myofascial pain, but she had fibromyalgia, headaches, hypertension, carpal tunnel syndrome, degenerative joint disease, and lumbar facet arthropathy. (Tr. 834.) Dr. Cooke noted that the

record revealed positive straight leg raising, diminished grip strength, inability to walk on heels or squat, and diminished range of motion of the lumbar and thoracic spine, hips, and knees, but no abnormal gait or diminished range of motion of the cervical spine. (*Id.*) Dr. Cooke stated that Plaintiff's response to her cervical surgery was good, and she did not report neck pain, numbness, or tingling in her upper extremities. (Tr. 835.) He also stated that "[t]here appears to be a great deal of symptom magnification in the [medical evidence of record]" (Tr. 833), and concluded that Plaintiff would be capable of performing sedentary work (Tr. 50).

### C. The ALJ's Decision

The ALJ found Plaintiff had the RFC to perform sedentary work.[2] (Tr. 17.) In making this finding, the ALJ gave significant weight to the non-examining opinions of Dr. Cooke. (Tr. 22.) The ALJ explained:

> Significant weight is accorded to this opinion because it is consistent with the treatment records from the claimant's surgeons, which document that the claimant's surgeries were successful and that no additional surgeries are recommended. Additionally, Dr. Cooke's opinion is consistent with the treatment records from the claimant's primary care physician in which the claimant reported that her pain was well controlled and that she had few side effects from her medications.

(Tr. 22-23.)

---

[2] Sedentary work involves lifting no more than ten pounds at a time; occasional lifting or carrying of articles like docket files, ledgers, and small tools; and occasional walking and standing. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 83-10.

Further, the ALJ gave little weight to the FCE adopted by Dr. Burns, because it contradicted Dr. Burns's treatment records that Plaintiff's pain was well-controlled on narcotic analgesics. (Tr. 21.) The ALJ also gave little weight to Dr. Burns's Physical RFC Questionnaire for the following reasons:

> First, the opinion that the claimant has seizures and tremors is inconsistent with the medical evidence of record, which shows no documentation for those alleged symptoms. Dr. Burns opined that the claimant has significant deficits in attention and concentration, but he continues to prescribe strong narcotics for her. The claimant goes to her appointments with Dr. Burns alone. If she had significant deficits in attention and concentration, would not Dr. Burns require a friend or family member to accompany the claimant to appointments to assist with medical decision making? Dr. Burns'[s] opinion that the claimant would need to lie down during the day is not supported by his treatment records.

(Tr. 22.)

In addition, the ALJ gave little weight to Dr. Harper-Nimock's consultative examination because "it is inconsistent with the objective imaging studies, which show only mild to moderate limitations" and "with the claimant's pain management records, which show that her pain is well controlled with narcotic analgesics." (Tr. 21.) Further, the ALJ gave little weight to Dr. Harper-Nimock's MSS "because the opinion that the claimant has been limited since 2006 is inconsistent with the fact that the claimant worked at substantial gainful activity levels in 2007" and "the limitations are out of proportion to the treatment records, which document that the claimant's pain is well controlled with narcotic analgesics." (*Id.*)

10

### D. Analysis

The Court agrees with Plaintiff that the ALJ improperly evaluated the medical opinions of record. For example, the ALJ gave significant weight to Dr. Cooke's non-examining opinions. However, the ALJ's reasons for doing so are not supported by substantial evidence.

First, the ALJ claimed that Dr. Cooke's opinion was consistent with treatment records showing that Plaintiff's surgeries were successful. Although Dr. Cooke stated that Plaintiff's response to her May 8, 2012 cervical surgery was good and she did not report neck pain, numbness, or tingling in her upper extremities (Tr. 835), the treatment records indicate that Plaintiff continued to complain of neck pain, numbness and tingling in her upper and lower extremities following the surgery, and even told her treating physician that "she wished she'd never had the neck surgery." (Tr. 666, 750-54, 770, 773, 780.)

Further, the ALJ claimed that Dr. Cooke's opinion was consistent with treatment records showing that Plaintiff's pain was well-controlled with medication. However, the treatment records indicate that even with pain medication, Plaintiff's pain was at 7 or above on a scale of 1 to 10. (Tr. 665, 668, 671, 674, 677, 680, 683, 686, 689, 692, 695, 698, 701, 772, 775, 780, 785.) Also, as shown above, Plaintiff's neck pain continued even after her surgery. The treatment records further indicate that Plaintiff was given steroid injections for

11

pain and was advised of the need for an intrathecal pump given the inadequate relief from medication. (*See, e.g.*, Tr. 738, 775.) In addition, although two of Dr. Burns's progress notes from 2013 indicate that Plaintiff's pain was "controlled with narcotic analgesics," the same notes provide that Plaintiff received only "some relief from medications." (Tr. 838-39.) Based on the foregoing, the ALJ's finding that Plaintiff's pain was well-controlled with medication is not supported by substantial evidence.

Significantly, the ALJ used the same finding, alone or in combination with other reasons, to discount the opinions of Plaintiff's treating physician, Dr. Burns, and examining physician, Dr. Harper-Nimock. For example, the ALJ gave little weight to the FCE adopted by Dr. Burns because it contradicted Dr. Burns's treatment records showing that Plaintiff's pain was well-controlled with medication.[3] (Tr. 21.) However, as shown above, the ALJ's finding that Plaintiff's pain was well-controlled with medication is not supported by substantial evidence. Thus, the ALJ erred in his evaluation of Dr. Burns's opinions included in the FCE.

The ALJ also erred in giving little weight to Dr. Burns's Physical RFC Questionnaire. First, contrary to the ALJ's statement, Dr. Burns's opinion that Plaintiff would need to lie down during the day is supported by his treatment records, which show, *inter alia*, constant, aching pain that was only somewhat

---

[3] For the same reason, among others, the ALJ gave little weight to Dr. Harper-Nimock's opinions. (Tr. 21.)

reduced by medication, chronic fatigue, and numbness and tingling in all extremities. (*See, e.g.,* Tr. 668.) Further, although the ALJ seems to imply that Dr. Burns should not have prescribed strong narcotics in light of Plaintiff's significant deficits in attention and concentration, any deficits in attention and concentration were actually due to Plaintiff's severe pain, which needed to be controlled with such medications. The ALJ also speculates that if Plaintiff had significant deficits in attention and concentration, she would be accompanied by a friend or family member at her appointments. However, the record does not indicate whether Plaintiff was or was not accompanied by anyone at her appointments. Even if she was not, it is too speculative to conclude that she needed to be given her condition.[4] Therefore, the ALJ also erred in his evaluation of Dr. Burns's opinions included in the Physical RFC Questionnaire.

Accordingly, this case will be reversed and remanded with instructions to the ALJ to reconsider the opinions of Dr. Burns and Dr. Cooke, explain what weight they are being accorded, and the reasons therefor. In the event the ALJ decides to reject any portion of Dr. Burns's opinions, the ALJ must provide good cause therefor. In light of this conclusion and the possible change in the RFC assessment, the Court finds it unnecessary to address Plaintiff's remaining

---

[4] The ALJ also discounted Dr. Burns's opinions because his Physical RFC Questionnaire included a reference to seizures and tremors, which was inconsistent the treatment records. It appears that the inclusion of seizures and tremors in the Physical RFC Questionnaire was a clerical error.

argument that the ALJ erred in evaluating Dr. Harper-Nimock's opinions. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam). However, on remand, the ALJ will be directed to re-consider Dr. Harper-Nimock's opinions as well.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) reconsider the opinions of Dr. Burns, Dr. Cooke, and Dr. Harper-Nimock, explain what weight they are being accorded, and the reasons therefor; (b) reconsider the RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

3. Should this remand result in the award of benefits, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, Plaintiff's attorney is **GRANTED** an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b). Plaintiff's attorney shall file such a petition within **thirty (30) days** from the date of the Commissioner's letter sent to

Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees.  See In re: *Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No. 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on July 14, 2015.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record